**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CORY SYLVIA,

        Plaintiff - Appellant,

v.

JAMES L. WISLER; DAVID
TREVINO; XPRESSIONS, L.C.,

        Defendants - Appellees.

No. 15-3284

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:13-cv-02534-EFM-TJJ)**

---

Submitted on the briefs:[*]

Alan V. Johnson of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C.,
Topeka, Kansas, for Plaintiff-Appellant.

Steven R. Smith, Gates Shields Ferguson Hammond, P.A., Overland Park, Kansas,
for Defendants-Appellees James L. Wisler and Xpressions, L.C.

Daniel F. Church of Morrow Willnauer Klosterman Church, Kansas City,
Missouri, for Defendant-Appellee David Trevino.

---

    [*]    After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.

_____

**HOLMES**, Circuit Judge.

_____

This case presents a difficult question of Kansas law: when do legal malpractice claims involving a failure to act sound in tort rather than contract? Kansas, like other states, distinguishes between legal malpractice claims. Some sound in contract. Others sound in tort. Generally, breach of a specific contractual provision or agreement to do a certain action sounds in contract, while breach of a duty imposed by law on attorneys by virtue of the attorney-client relationship sounds in tort. But the line separating failure to perform an agreed-upon action from breach of a duty imposed by law is not always bright.

Here, the plaintiff, Cory Sylvia, sued his former attorneys, James L. Wisler and David Trevino, for legal malpractice allegedly sounding in tort and breach of contract arising from their representation of Mr. Sylvia in a suit for wrongful termination against Goodyear Tire & Rubber Co. ("Goodyear"), his former employer. Later, Mr. Sylvia amended his complaint to add as a defendant Xpressions, L.C. ("Xpressions"), a limited liability company formerly known as the Wisler Law Office, L.C.

Mr. Sylvia's initial complaint characterized his claims as sounding both in tort and in contract. Specifically, he faulted (1) both individual defendants for

2

failing to include in, or to later amend, his complaint to aver a workers' compensation retaliation claim; and (2) solely Mr. Wisler for voluntarily dismissing Mr. Sylvia's case on the erroneous belief that all claims could be refiled, causing one of his claims to become barred by the statute of limitations. For each of these claims, Mr. Sylvia advanced both tort and contract theories of liability.

Messrs. Wisler and Trevino each filed Federal Rule of Civil Procedure 12(b)(6) motions to dismiss, which were granted in part and denied in part. The court granted dismissal of the legal malpractice claims—allegedly sounding in tort—holding that the claims were not properly characterized as torts and merely duplicated the breach of contract claims. The court allowed the breach of contract claims to go forward. On motions for summary judgment by Mr. Trevino and by Mr. Wisler and Xpressions, filing jointly, the court granted both motions, disposing of the remaining contract claims and the case.

Mr. Sylvia appeals from both the district court's dismissal of his alleged tort claims and its grant of summary judgment for the defendants on the breach of contract claims. Exercising jurisdiction pursuant to 28 U.S.C. § 1291,[1] we hold

---

[1]    On July 1, 2016, this court ordered the parties to file a joint response to state the citizenship of Messrs. Wisler and Trevino and all members of Xpressions at the time that proceedings commenced in the district court. Mr. Sylvia's amended complaint had failed both to make clear the state of domicile of Mr. Wisler, as well as to indicate the citizenship of all members of Xpressions.

(continued...)

3

that, under Kansas law, Mr. Sylvia has alleged that defendants breached a duty imposed by law in the context of their attorney-client relationship; such claims sound in tort. Accordingly, for reasons further detailed *infra*, we reverse in part and vacate in part the district court's judgment dismissing Mr. Sylvia's legal malpractice claims. However, regarding the district court's grant of summary judgment for the defendants on the breach of contract claims, we affirm. We remand the case for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

Mr. Sylvia's claims against Messrs. Wisler and Trevino arose from a lawsuit against Goodyear for wrongful termination in which the defendants represented Mr. Sylvia. Mr. Sylvia had sustained repeated injuries working for Goodyear. He filed multiple workers' compensation claims for those injuries but was fired when he allegedly failed to report a medically necessary absence in violation of a "Last Chance Agreement" Mr. Sylvia had entered into with Goodyear. Aplt.'s App. at 11–13 (Compl., dated Oct. 16, 2013). After his firing,

---

[1](...continued)

In response, the parties clarified to our satisfaction that all the defendants and all members of Xpressions are citizens of Kansas. Because Mr. Sylvia is a citizen of Massachusetts, the requirements of diversity jurisdiction are met. *See, e.g.*, *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("Congress has authorized the federal district courts to exercise jurisdiction over certain cases between citizens of different states. 28 U.S.C. § 1332(a)(1). But such diversity jurisdiction exists only if no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'" (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005))).

Mr. Sylvia filed a charge with the Equal Employment Opportunity Commission alleging that his termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213, and later received a notice of right to sue. Between filing the charge and receiving the notice of right to sue, Mr. Sylvia received an award from the Kansas Division of Workers' Compensation for his claims against Goodyear.

Shortly after receiving the notice of right to sue, Mr. Sylvia retained Wisler & Trevino, L.C., the defendants' former law firm, to represent him in a wrongful termination suit against Goodyear. Mr. Sylvia signed a written contract with Wisler & Trevino, L.C., that stated in part:

> Cory Sylvia has been wrongfully discharged due to disability discrimination and FMLA [i.e., Family and Medical Leave Act, 29 U.S.C. §§ 2601–54] violation/retaliation and Workers Compensation retaliation from GoodYear Tire and Rubber Company on or about May 9, 2009. The firm will file suit in federal court in Kansas on *one or more* of these claims.

Aplt.'s App. at 132 (Wisler & Xpressions' Mem. Supp. Mot. Summ. J., dated Mar. 5, 2015) (emphasis added). Mr. Sylvia alleges that before or at the time the contract was executed, he was assured by Messrs. Wisler and Trevino that all five claims discussed by the parties would be brought against Goodyear.[2] The

---

[2] Not entirely apparent from the face of the contract, the five claims are: disability discrimination under both the ADA and the Kansas Act Against Discrimination, a violation of the FMLA, FMLA retaliation, and workers' compensation retaliation. *See id.* at 67 (Mem. & Order, dated June 19, 2014).

complaint filed by Mr. Trevino, however, omitted both retaliation claims (i.e., FMLA retaliation and workers' compensation retaliation).

Further, Mr. Sylvia avers that after the lawsuit was filed he received a copy of the complaint and—alerted to the fact that his attorney had included only three of the claims—raised the issue of the missing retaliation claims with Mr. Wisler, who allegedly responded: "[W]e had to file these three claims first, but we will file the other two claims later." *Id.* at 191 (Pl.'s Mem. Opp'n Mot. Summ. J., dated Apr. 7, 2015). Mr. Sylvia asserts that, in relying on Mr. Wisler's statement, he did not insist that the written contract be modified to require the filing of all five claims.

During the course of the underlying litigation, Messrs. Wisler and Trevino dissolved their partnership, and Mr. Sylvia chose Mr. Wisler to continue the representation; Mr. Trevino withdrew. About the same time, the Social Security Administration determined that Mr. Sylvia was disabled and so eligible for disability benefits beginning April 1, 2009—over a month before he was discharged by Goodyear on May 8, 2009. As a result, Mr. Wisler believed that he could not argue in good faith that Mr. Sylvia had a good claim or had suffered substantial damages.

According to Mr. Sylvia, around this time he and Mr. Wisler had multiple conversations regarding the possibility of voluntarily dismissing the case against Goodyear. Mr. Sylvia allegedly asked Mr. Wisler multiple times not to dismiss

6

so that Mr. Sylvia could find other counsel to prosecute the case. But Mr. Sylvia says that Mr. Wisler repeatedly assured him that he would be able to refile all of the claims. Allegedly relying on those assurances, Mr. Sylvia consented to the voluntary dismissal of his case.

Mr. Sylvia retained new counsel who filed suit in the District of Kansas against Goodyear for (1) interference in violation of the FMLA, (2) FMLA retaliation, (3) wrongful discharge in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1000–461, and (4) disability discrimination in violation of the ADA. However, on April 26, 2012, Mr. Sylvia's claim for disability discrimination under the ADA was dismissed as time-barred because state tolling and savings statutes do not apply to ADA claims, which must be filed within 90 days of receiving a notice of right to sue. Mr. Sylvia settled his remaining claims against Goodyear for $12,000.

On October 16, 2013, Mr. Sylvia brought suit against Messrs. Wisler and Trevino in the District of Kansas for allegedly tortious conduct and breach of contract. Before answering the complaint, Messrs. Wisler and Trevino moved to dismiss the claims against them for failure to state a claim. The district court granted in part the motions to dismiss, dismissing the legal malpractice claims that Mr. Sylvia asserted sounded in tort, while permitting the contract claims to proceed.

In doing so, the district court held that Mr. Sylvia had failed to state a

7

facially plausible claim that the defendants violated a duty imposed by law and thus committed a tort. Mr. Sylvia then moved to amend his complaint to add Xpressions, formerly Wisler Law Office, L.C., as a defendant. He conformed his amended complaint to the district court's dismissal order by omitting the alleged tort claims.

After limited discovery, the defendants moved for summary judgment on the remaining contract claims. The district court granted the defendants' motions for summary judgment, dismissing the remaining contract claims. The court rejected Mr. Sylvia's arguments, and held, *inter alia*, (1) that the parol evidence rule barred evidence of oral statements before or contemporaneous with the execution of the written contract; (2) that Mr. Sylvia had failed to show a subsequent oral agreement supported by consideration; and (3) that the voluntary dismissal of the underlying case did not breach the terms of the written contract or any other contractual obligation.

Mr. Sylvia now appeals from the district court's dispositions of the motions to dismiss and the motions for summary judgment. We examine each set of motions in turn, beginning with the district court's granting of the motions to dismiss for failure to state a claim as to Mr. Sylvia's alleged tort claims, before turning to the granting of the summary judgment motions in favor of the defendants on Mr. Sylvia's contract claims.

## II.  DISCUSSION

As to the claims at issue here, we note at the outset that "[b]ecause the district court's jurisdiction was based on diversity of citizenship, [Kansas] substantive law governs . . . .  This court must therefore 'ascertain and apply [Kansas] law with the objective that the result obtained in the federal court should be the result that would be reached in [a Kansas] court.'"  *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1323 (10th Cir. 2008) (citation omitted) (quoting *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998)).  "To properly discern the content of state law, we 'must defer to the most recent decisions of the state's highest court.'"  *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).  However, stare decisis requires that we be "bound by our own prior interpretations of state law" "unless an intervening decision of the state's highest court has resolved the issue."  *Id.* (quoting *Wankier*, 353 F.3d at 866).

## A.    Dismissal of Mr. Sylvia's Alleged Tort Claims

This court reviews "de novo the district court's granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013)).  To overcome a motion to dismiss, "a complaint must plead facts sufficient 'to state a "claim to relief that is plausible on its face."'"  *Slater*, 719 F.3d at 1196 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[W]e must accept all the well-pleaded allegations of the

9

complaint as true and must construe them in the light most favorable to the plaintiff." *Albers*, 771 F.3d at 700 (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). "[T]he Rule 12(b)(6) standard doesn't require a plaintiff to 'set forth a prima facie case for each element.'" *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). "[A] claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014)).

On appeal, Mr. Sylvia argues that his complaint stated facially plausible claims for legal malpractice sounding in tort against Messrs. Wisler and Trevino. Specifically, he argues that the district court erred by not recognizing that he had properly pleaded claims for malpractice sounding in both tort and breach of contract, which is permitted under Kansas law. He further argues that these tort claims are based on violations of a duty imposed by law by virtue of the attorney-client relationship, independent of obligations arising under the contract. Messrs. Wisler and Trevino respond that the district court was correct in its holding and that Mr. Sylvia's claims most closely resemble the kind found in *Juhnke v. Hess*, 506 P.2d 1142 (Kan. 1973), where the Supreme Court of Kansas held that an attorney's failure to file an appeal where he had been employed for that very purpose sounded in contract rather than tort.

10

Because the same principles of Kansas law apply to the dismissal of the claims against Messrs. Wisler and Trevino, we first analyze the Kansas caselaw to establish the relevant legal principles before applying them to these claims.

### 1.    Kansas Caselaw Characterizing Legal Malpractice Claims

Under Kansas law, "[l]egal and medical malpractice generally constitute both a tort and a breach of contract." *Pancake House, Inc. v. Redmond*, 716 P.2d 575, 578 (Kan. 1986). However, Kansas cases distinguish tort and contract malpractice claims by asking "whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." *Id.* (citing *Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 888–89 (Kan. 1976) (holding that a complaint stated a claim for tortious medical malpractice rather than breach of contract where the gravamen of the complaint was failure "to provide necessary, complete, competent, and authorized treatment" (emphasis omitted))).

The leading Kansas case on the characterization of legal malpractice claims, *Pancake House*, offers the following guidance:

> A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties.
>
> . . . Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law

11

upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.

. . . .

While other jurisdictions are divided as to whether legal malpractice may be categorized as a cause of action in tort or one in contract, Kansas has held that where a legal duty is imposed by law, the cause of action is in tort. Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract.

716 P.2d at 578 (citations omitted); *accord Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 936 P.2d 714, 718 (Kan. 1997) (quoting same). *Compare* W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 92, at 656 (5th ed. 1984) (noting that "[c]ontract obligations" are those "based on the manifested intention of the parties to a bargaining transaction"), *with id.* ("Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction.").

As in other jurisdictions, Kansas courts most commonly have addressed legal malpractice claims that sound in tort. *See Pancake House*, 716 P.2d at 578 (identifying one Kansas Supreme Court case in which claims sounded in contract and noting that "[n]ot all malpractice actions in Kansas may be deemed tort actions"); Roy Ryden Anderson & Walter W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle*, 47 SMU L. REV. 235, 236 (1994) (noting that "the action for

12

negligence is the most common and well-developed form for a malpractice claim"). "Lawyers, like other professionals, are required to have and exercise the learning and skill ordinarily possessed by members of their profession in the community." *Bowman v. Doherty*, 686 P.2d 112, 120 (Kan. 1984). "[W]hen the attorney's performance falls short of that expected of an ordinary, reasonably prudent lawyer, the attorney is guilty of the tort of malpractice." Anderson & Steele, *supra*, at 245; *see Pancake House*, 716 P.2d at 578 (noting that "[w]here the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client[,] . . . the action is in tort").

In this regard, in a host of cases, the Kansas courts have determined that malpractice actions sounded in tort, where the claims alleged that attorneys failed to properly perform their professional duties imposed on them by law in the context of the attorney-client relationship. For example, in *Pancake House*, attorneys who had previously represented a corporation filed suit against the corporation on behalf of certain of its shareholders; Kansas's high court held that the corporation's malpractice claim sounded in tort because the obligation allegedly breached was "not a part of any express or implied contract," but instead stemmed from "a legal duty [] imposed by law." 716 P.2d at 578. The legal duty at issue related to the circumstances under which an attorney is prohibited from suing a business for whom she had previously provided legal services. *Id.* at 577–78. In effect, the plaintiff claimed that the attorney defendants had "breach[ed] a duty imposed by law upon the relationship of attorney/client" by their allegedly improper actions. *Id.*

13

Likewise, in *Kansas Public Employees Retirement System*, the Kansas Supreme Court held that a failure "to provide *sound and appropriate* legal services" or "failing to *properly* advise" in relation to investment transactions sounded in tort rather than contract. 936 P.2d at 718–19 (emphases added). In *Canaan v. Bartee*, that court affirmed a district court judgment that the malpractice claims of a criminal defendant against his court-appointed attorneys and their investigator for his wrongful conviction sounded in tort where "the gravamen of [the] lawsuit [was] that his appointed public defenders and their investigator were negligent in providing services." 72 P.3d 911, 913, 921 (Kan. 2003).

Additionally, in *Jeanes v. Bank of America, N.A.*—a case cited by all parties—the Kansas Court of Appeals held that a trust and estate attorney's failure to provide legal advice in estate-planning services that would have saved millions in estate tax liability was not a breach of any specific contractual provision and instead sounded in tort as a failure "to exercise ordinary skill and knowledge in giving legal advice." 191 P.3d 325, 331 (Kan. Ct. App. 2008), *aff'd on other grounds*, 295 P.3d 1045, 1047, 1053 (Kan. 2013) (per curiam). Earlier, the Kansas Court of Appeals had also held, in *Chavez v. Saums*, that an attorney's conflicted representation in filing suit against a former client breached a "legal dut[y] imposed by law upon the relationship" between the lawyer and client, rather than any "specific terms of the contract." 571 P.2d 62, 65 (Kan. Ct. App. 1977). The court therefore held that the former client's claims against the attorney arising from the conflicted representation sounded in tort. *Id.*

14

On the other hand, in limited instances, the Kansas courts have classified malpractice actions as sounding in contract. A clear example in this regard is the Kansas Supreme Court's decision in *Juhnke v. Hess*. There, an attorney was expressly retained to file an appeal and failed to do so, resulting in his client's right to appeal becoming time-barred. *See* 506 P.2d at 1143. The Supreme Court of Kansas held that this constituted "breach of a specific contract—failure to do that which [the attorney] expressly agreed to perform." *Id.* at 1145 (noting that "the claim for relief [was one for breach of an express] unwritten contract").

Moreover, in an instructive opinion, the Kansas Court of Appeals applied *Juhnke* to conclude that the plaintiff's claim against the attorney and law firm that handled a domestic relations matter for her sounded in contract. *Pittman v. McDowell, Rice & Smith, Chartered*, 752 P.2d 711, 718 (Kan. Ct. App. 1988). As in *Juhnke*, the attorney failed to perform an expressly bargained-for task in carrying out the representation. "While the attorney in *Juhnke* neglected to perform the initial duty in his contractual representation (failure to file a notice of appeal), [the attorney in *Pittman*] neglected to perform the final duty in his contractual representation (failure to file a journal entry setting forth an agreed child support order)." *Id.* More specifically, the court reasoned:

> [The attorney] was employed to file a motion for child support, obtain service on [the plaintiff's ex-husband], and obtain a child support order.
>
> . . . *The only thing [the attorney] failed to do was to prepare and file a journal entry* which would have completed his express agreement for services to [the plaintiff].

15

> We hold [the attorney] has failed to perform a duty arising under or imposed by agreement, which is in contract . . . .

*Id.*

*Pittman* underscores *Juhnke*'s message that claims sounding in contract typically involve bargained-for promises by attorneys to perform certain actions—whether those actions are concentrated at the outset of the representation, as in *Juhnke*, or are just particular steps during the journey of the representation to a definite destination, as in *Pittman*. *See* Anderson & Steele, *supra*, at 251 ("The core ingredient of a contract action by a client against his attorney is breach of promise by the attorney. Accordingly, the client must plead and prove by a preponderance of the evidence breach of a promise, as well as the other basic ingredients of a contract cause of action, such as foreseeability, causation, and damages."); *id.* at 244–45 ("[A] suit between a client and his lawyer may be based on a breach of contract without raising issues of negligence or violation of the attorney's fiduciary obligations. In such cases, the allegation is simply that the attorney did not do what the contract, by expression or implication, said that he would do."); *see also* Keeton et al., *supra*, § 92, at 658 ("When one makes a promise—a commitment as to what he will do or will not do in the future—this generally induces reasonable reliance . . . . But contractual liability can be regarded as limited to the type of case where promises are found to be enforceable, and the damage results from the breach of an enforceable promise.").

Thus, in contrast to claims sounding in tort, the focus of these claims sounding in

contract is not whether the attorney "exercise[d] the learning and skill ordinarily possessed by members of their profession in the community," or even whether the attorney offered unenforceable assurances regarding her performance. *Bowman*, 686 P.2d at 120; *cf.* Keeton et al., *supra*, § 92, at 659 ("[I]n some situations when one undertakes to act he may be doing so under circumstances where, *apart from the contract that he makes*, there should be a duty to exercise reasonable care to others whose economic interests are likely to be affected by the way *the conduct is performed*. This is especially true of *representations* made to a client by a lawyer . . . ." (emphases added)).

All that said, we acknowledge that "legal malpratice actions often fall on th[e] 'borderland of tort and contract,'" Anderson & Steele, *supra*, at 266 (quoting William Lloyd Prosser, *The Borderland of Torts and Contract, in* SELECTED TOPICS ON THE LAW OF TORTS 380 (1953)), and that "[t]he distinction between tort and contract liability" may be a "difficult distinction to make," Keeton et al., *supra*, § 92, at 655; *see Hunt v. KMG Main Hurdman*, 839 P.2d 45, 46 (Kan. Ct. App. 1992) ("The determination of whether a particular action is based on contract or in tort is not always an easy one."). In clarifying and illuminating the metes and bounds of this "borderland" in Kansas law, we consider a careful examination of the Kansas Supreme Court's decision in *Bowman* helpful. This is especially so because, at least at first blush, *Bowman* might appear to be akin to *Juhnke* and *Pittman*, where the Kansas courts concluded that the claim at issue sounded in contract; yet, in *Bowman*, the Kansas Supreme Court concluded that the claim sounded in tort.

17

Specifically, in *Bowman*, the plaintiff, Michael Bowman, retained an attorney, defendant Harold Doherty, to represent him in connection with a charge of passing a worthless check. *See* 686 P.2d at 115. Mr. Bowman was out of town and unable to appear for his initial court date when he retained Mr. Doherty, who told Mr. Bowman he would "take care of the matter." *Id.* Despite arranging with a deputy district attorney for a continuance, Mr. Doherty failed to arrange a continuance with the trial court. *See id.* Thereafter, a bench warrant was issued for Mr. Bowman, and he later received a letter from the sheriff's office notifying him that he was in contempt of court for failure to appear. *See id.* at 115–16. Mr. Bowman called Mr. Doherty and met with him regarding the letter, and Mr. Doherty again assured Mr. Bowman that he would take care of the matter. *See id.* at 116. Mr. Bowman was arrested a month later for aggravated failure to appear. *See id.* After Mr. Bowman was released from jail, he and his father met with Mr. Doherty, who agreed to represent Mr. Bowman in both cases (i.e., the worthless-check and failure-to-appear cases). *See id.* Toward the end of resolving the cases, Mr. Doherty advised Mr. Bowman that he needed to appear before the court and promised Mr. Bowman that he would be there with him. Mr. Doherty thereafter scheduled the court date. Mr. Bowman and his father appeared on that date; Mr. Doherty did not. *See id.* Mr. Bowman thereafter hired a new lawyer and resolved both of his cases. *See id.*

Mr. Bowman then sued Mr. Doherty for both legal malpractice and breach of contract. *See id.* at 115. As relevant here, the jury rendered a verdict in Mr. Bowman's favor and awarded him damages, including punitive damages. *See id.* at 117. Mr.

18

Doherty appealed from the jury's verdict on the grounds that Mr. Bowman's claim sounded solely in contract and therefore punitive damages were not available. *See id.* at 117, 120. At the outset, the Supreme Court of Kansas concluded that the trial court "correctly" denied Mr. Doherty's motions for directed verdicts upon "determining that both a legal and contractual obligation *could have* been breached." *See id.* at 120 (emphasis added). However, the court upheld the punitive damages award under the view that the jury ultimately determined that Mr. Doherty was negligent. *Id.* at 117, 120. That is, the punitive damages award was permissible because the "action sounded in tort" (i.e., stemmed from the breach of a legal duty). *Id.* at 120.

Yet, the claims at issue in *Bowman*—at least on a superficial level—arguably resemble the claims in *Juhnke* and *Pittman*, which the Kansas courts held sounded in contract. In this regard, like the attorneys in those two cases, Mr. Doherty made assurances to Mr. Bowman that he would take certain steps in the representation and then failed to accomplish them. *See Bowman*, 686 P.2d at 115–16. However, unlike *Juhnke* and *Pittman*, there was no indication in *Bowman* that Mr. Doherty's assurances were enforceable—*viz.*, that they constituted enforceable contracts. Specifically, Mr. Doherty agreed to represent Mr. Bowman in his pending worthless-check case and the later case for failure to appear but did not explicitly contract with Mr. Bowman to undertake any particular steps in the representation; instead, Mr. Doherty repeatedly said he would "take care of" things and offered general, naked assurances to this effect, on which he did not follow through. *Bowman*, 686 P.2d at 115–16. Thus, Mr. Doherty's failure to perform

19

certain promised acts in his representation of Mr. Bowman did not have the effect under the circumstances there of breaching any specific terms of their attorney-client contract. Instead, insofar as the particular acts were important to the representation and would have been performed by a lawyer possessing ordinary learning and skill, Mr. Doherty's failure to undertake them breached his professional duty to his client[3]—a duty imposed by law.

Thus, Mr. Doherty's liability turned on his failure to undertake such necessary steps in the representation by "exercis[ing] the learning and skill ordinarily possessed by members of [the legal] profession in the community." *Id.* at 120; *see also id.* at 119 ("The jury believed the defendant took *insufficient* action to obtain a continuance in the plaintiff's criminal case. Without a continuance, plaintiff's arrest for his failure to appear

---

[3]     Mr. Doherty undertook some actions to represent Mr. Bowman in each proceeding, such as negotiating a continuance with the deputy district attorney for the original proceedings regarding the worthless-check case and obtaining a court date with the aim of resolving both the worthless-check case *and* the failure-to-appear case. *See* 686 P.2d at 115–16. But in each instance, Mr. Doherty failed to diligently and competently represent Mr. Bowman. In the worthless-check case, despite successfully negotiating a continuance with the deputy district attorney, he failed to obtain a continuance with the court itself. *See id.* at 115. Similarly, although he scheduled a court date to address the two cases, he failed to appear with his client on the date the client was to appear. *See id.* at 116. In each representation, Mr. Doherty did *something*, but he did not take necessary steps to carry out the representation that would have been taken by a competent attorney. He did not do *enough* or *well enough*, and his client suffered harm as a result. *Cf. Hunt*, 839 P.2d at 48 ("[T]he action is more in the nature of a violation of a duty imposed by law, instead of failure to perform a duty arising by reason of the agreement. . . . The challenge by [the client] is not that the auditors failed to perform the contract, but rather that they failed to perform it with due care.").

was foreseeable to a lawyer." (emphasis added)). And, accordingly, the Kansas Supreme Court held that Mr. Bowman's claim sounded in tort.

On closer inspection, then, *Bowman* is distinguishable from *Juhnke* and *Pittman*. The holdings of these three cases nevertheless may be harmonized in a way that clarifies and sheds light on the "borderland" between tort and contract in Kansas legal malpractice claims. In brief, a claim that a lawyer failed to perform acts in his legal representation of a client that were the subject of bargained-for promises sounds in contract, whereas a claim that an attorney's acts or omissions in carrying out a representation fell short of the ordinary standard of learning or skill in the legal community sounds in tort.

\*\*\*

We now proceed to apply the foregoing principles to Mr. Sylvia's claims against Messrs. Wisler and Trevino. We begin with the claims against Mr. Wisler before turning to the claim against Mr. Trevino.

### 2. Claims Against Mr. Wisler

Mr. Sylvia argues that his complaint stated facially plausible claims for legal malpractice sounding in tort against Mr. Wisler for two separate breaches of duty: (1) failure to amend the complaint in the underlying litigation to include a claim of workers' compensation retaliation, resulting in that claim becoming time-barred; and (2) voluntarily dismissing Mr. Sylvia's case after erroneously advising him that he would be able to refile all claims, causing his ADA discrimination claim to become time-barred. Notably, these two breaches—that is, claims of legal malpractice allegedly sounding in

21

tort—both appeared in a single count of the original complaint, Count I, which was denominated "Legal Malpractice." Aplt.'s App. at 17. The district court dismissed this count in its entirety; its analysis, however, only expressly addressed the first alleged breach of duty related to the failure to amend.

More specifically, Mr. Sylvia's original complaint alleged that he met with Mr. Wisler along with Mr. Trevino "to employ them to file a lawsuit on his behalf," that he "signed a written contract with Wisler & Trevino, L.C.," and that, when Mr. Trevino withdrew from the litigation, Mr. Wisler filed an entry of appearance on behalf of Mr. Sylvia. *Id.* at 13–15.

Count I of the complaint alleges that Mr. Wisler "failed to amend the complaint [in the underlying litigation] to include a claim of workers['] compensation retaliation." *Id.* at 17. Because of that failure to amend the complaint to include a claim of workers' compensation retaliation, Mr. Sylvia was unable to bring that claim in his second suit against Goodyear filed by new attorneys because "such a claim was never asserted in [the first lawsuit], and therefore the claim was time-barred." *Id.* at 16.

Count I also alleges that Mr. Wisler later refused Mr. Sylvia's requests not to voluntarily dismiss the case and repeatedly and "erroneously advised Mr. Sylvia that all of the claims in that case could be re-filed." *Id.* at 17. However, after filing a new action, the district court dismissed his claim for ADA discrimination as time-barred because Kansas's savings statute does not apply to ADA cases. *Id.* at 16–17. The loss of the workers' compensation retaliation claim and the ADA discrimination claim "substantially

22

diminished" "the value of Mr. Sylvia's claims" in his second suit against Goodyear.  *Id.* at 17.  This diminution in value allegedly was caused by Mr. Wisler's negligence.  *Id.*

The question presented here is whether these two claims sound in tort, rather than contract, under Kansas law.  As to the first claim relating to the failure to amend, we conclude that the district court committed reversible error in granting Mr. Wisler's motion to dismiss.  Based on the authorities and reasoning explicated *supra*, this claim sounds in tort.  As to the second claim (i.e., relating to the dismissal of the underlying action based on erroneous advice), though the district court's judgment effectively dismissed this claim, the court's analysis did not expressly address it, much less characterize it as sounding in contract rather than tort.  Consequently, for reasons that we explicate *infra*, we believe it to be most prudent and fair to permit the district court to address the merits of this second claim in the first instance, with the benefit of our sketch herein of the contours of Kansas law.

> **a.      Claim Against Mr. Wisler for Failure to Amend the Complaint to Include a Claim for Workers' Compensation Retaliation**

In dismissing Mr. Sylvia's claim against Mr. Wisler for failure to amend the complaint to include a workers' compensation retaliation claim, the district court characterized the claim as being like that in *Juhnke*:

> Plaintiff entered into a contract with Wisler & Trevino, L.C. for legal services, namely to file a claim of wrongful termination against Goodyear based on a variety of grounds.  Plaintiff now alleges that Defendants failed to do exactly that by not asserting a claim of workers' compensation retaliation. . . .  Plaintiff fails to set forth a

23

facially plausible argument that Defendants violated a legal duty, and therefore committed a tort, by not filing a petition that contained a claim for workers' compensation retaliation.

Aplt.'s App. at 73–74. We must disagree with the district court's analysis and ultimate conclusion.

The court's analysis centered on the existence of an attorney-client contract between Mr. Sylvia and Mr. Wisler's firm for the filing of certain claims with respect to Mr. Sylvia's wrongful termination from Goodyear; based on its analysis, the court concluded that Mr. Sylvia's first Count I claim sounded in contract. But the existence of this contract in itself does not shed much light on whether Mr. Sylvia may properly allege that Mr. Wisler violated a *legal duty* stemming from their attorney-client relationship (evidenced by the contract) when he failed to amend the complaint to include a workers' compensation retaliation claim. *See Pancake House*, 716 P.2d at 578 (noting that a legal malpractice action "generally constitute[s] both a tort and a breach of contract," but where "the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort"); Keeton et al., *supra*, § 92, at 657–58 ("A contract or bargaining transaction brings into existence a relationship of one kind or another at or after the contract or bargaining transaction is made. . . . *The obligations as between parties to such contracts are not always obligations based entirely on the manifested intent of the parties*." (emphasis added)).

More specifically, the same relationship between a client and her attorney may conceivably provide the basis for claims sounding in both contract and tort. *See Pancake*

24

*House*, 716 P.2d at 578 ("Legal . . . malpractice generally constitute[s] both a tort and a breach of contract."); *accord Bowman*, 686 P.2d at 120; *see also* Dan B. Dobbs et al., DOBBS' LAW OF TORTS § 718 (2d ed.), Westlaw (database updated June 2017) ("Legal malpractice . . . entails breach of a duty *created by the contract or by the relationship with the client*. Indeed, in some cases the claim may be brought as a contract claim as well as a negligence claim." (emphasis added) (footnotes omitted)); Anderson & Steele, *supra*, at 251 ("Frequently courts allow the same set of facts to support causes of action against attorneys for both malpractice[, i.e., sounding in tort,] and breach of contract."). And there is nothing in the federal rules or in Kansas practice that prevented Mr. Sylvia from pleading in the alternative claims sounding in both tort and contract. *See* FED. R. CIV. P. 8(d)(2)–(3) (allowing the pleading of claims "alternatively or hypothetically, either in a single count . . . or in separate ones" and for the pleading of separate claims "regardless of consistency"); KAN. STAT. ANN. § 60-208(d)(2)–(3) (Kansas's analogue to Federal Rule 8(d)); *Price v. Holmes*, 422 P.2d 976, 980 (Kan. 1967) ("[W]e have held it permissible for a pleader to allege a cause of action in the alternative provided the alternatives are not repugnant . . . . Our decisions have also upheld the right of a plaintiff to plead twin causes of action arising out of a single transaction, the one sounding in tort and the other being in contract . . . ." (citation omitted)); *see also Bowman*, 686 P.2d at 120 ("The trial court correctly overruled the defendant's motions for directed verdicts by determining that both a legal and contractual obligation could have been breached.").

Accordingly, the mere existence of an attorney-client contractual relationship

25

between Mr. Sylvia and Mr. Wisler for the latter's firm to file certain claims with respect to Mr. Sylvia's wrongful termination from Goodyear should not have the effect of transforming any subsequent malpractice claims by Mr. Sylvia related to such filing into ones sounding solely in contract. *Cf. Juhnke*, 506 P.2d at 1145 ("It is true the petition also described such default as having negligently occurred but use of the term 'negligently' does not necessarily serve to translate the action into one sounding in tort.").

Naturally construed, the complaint alleges that Mr. Wisler's failure to amend the complaint was an act of negligence that caused a viable workers' compensation claim to become time-barred, diminishing the value of Mr. Sylvia's claims against Goodyear. Aplt.'s App. at 13–17. In our view, Mr. Wisler's failure to act is akin to the failure of performance of Mr. Doherty in *Bowman*. Accordingly, Mr. Sylvia properly stated a claim for malpractice sounding in tort.

More specifically, contrary to the district court's apparent view, we believe that Mr. Sylvia's Count I claim is better analogized to that in *Bowman* than that in *Juhnke*. Unlike in *Juhnke*, the facts alleged by Mr. Sylvia do not show that Mr. Wisler expressly contracted with Mr. Sylvia to file each of the claims discussed by the parties, and that Mr. Wisler then breached that contract by not including the workers' compensation retaliation claim. And the plain text of Mr. Sylvia's written agreement with Mr. Wisler's firm does not establish the existence of such a contract. Though in complaint averments incorporated into Count I, Mr. Sylvia maintains that Mr. Wisler assured him that he would file all claims identified in their agreement, including the workers' compensation

26

retaliation claim, there is no indication in the complaint that these assurances constituted bargained-for promises (i.e., contracts in themselves). *Cf. Pittman*, 752 P.2d at 718 (discerning a claim sounding in contract where the complaint averred that the attorney failed to "perform the final duty in his contractual representation"). Thus, as in *Bowman*, Mr. Wisler is alleged to have offered only naked assurances, and by failing to follow through he did not "exercise the learning and skill ordinarily possessed by members of [the legal] profession in the community." 686 P.2d at 120. In other words, he allegedly breached a legal duty and committed a tort.

Moreover, the Kansas Court of Appeals's decision in *Jeanes*—which the district court used as the exemplar of a malpractice claim sounding in tort, Aplt.'s App. at 73—suggests that the mere allegation of a *failure* to provide services does not of itself produce a claim sounding in contract rather than tort. In *Jeanes*, the plaintiff complained of what was essentially a failure "to exercise ordinary skill and knowledge in giving legal advice"—that is, failing to counsel a client to take steps that would have avoided substantial estate tax liability upon her death. 191 P.3d at 331. Nonetheless, the plaintiff administrator attempted to bring a claim for breach of contract by alleging "a contract . . . to give estate planning advice" to the decedent and "fail[ure] to implement estate planning measures" or to "giv[e] any estate-planning advice." *Id.* at 329, 331. But the Kansas Court of Appeals looked behind the allegations of the contract claim and recognized that the contract claim merely duplicated the malpractice claim (sounding in tort) without actually alleging a failure "to do something which [the attorney] had

27

*specifically* agreed or contracted to do." *Id.* at 331 (emphasis added). Here, as in *Jeanes*, mere allegation of a "failure" to perform—even relating to (naked) assurances to file all claims, including the workers' compensation claim—does not have the effect of turning Mr. Sylvia's malpractice claim into one sounding in contract.

Mr. Wisler contends that, "[w]here doubt exists as to whether an action is based on contract or tort, words appropriate to a tort action will be disregarded and the petition will be treated as sounding in contract." Aplees. Wisler & Xpressions' Br. at 10 (quoting *Juhnke*, 506 P.2d at 1145). But Mr. Wisler omits an essential word from *Juhnke*. The full quotation reads: "[W]here doubt exists as to whether an action is based on *implied* contract or tort, words appropriate to a tort action will be disregarded and the petition will be treated as sounding in contract." *Juhnke*, 506 P.2d at 1145 (emphasis added). In other words, this rule requires that where there is doubt as to whether a plaintiff's claim is for breach of an *implied* contract or a tort claim, the claim must sound in contract and tort language is to be ignored. The district court, too, relied on this language from *Juhnke*—though properly quoted—in reaching its conclusion that Mr. Sylvia failed to plead tort malpractice claims against Messrs. Wisler and Trevino. But no implied contract is alleged here.

The complaint does not allege breach of an implied contract—*viz.*, "[a] contract implied in fact aris[ing] from facts and circumstances showing mutual intent to contract" or "[a] contract implied in law, or quasi contract, . . . a fiction of the law designed to prevent unjust enrichment." *Mai v. Youtsey*, 646 P.2d 475, 479 (Kan. 1982); *see also*

28

*Kirk v. United States*, 451 F.2d 690, 695 (10th Cir. 1971) ("The express contract is proven by testimony showing the promise and the acceptance, whereas the implied contract is inferred from the acts of the parties and other circumstances showing an intent to contract."). Instead, the complaint alleges a written agreement. In other words, at issue here is an express contract: that is, neither an implied-in-fact contract—such as when a man silently enters a barbershop and receives a haircut without having said a word or signed any agreement—nor an implied-in-law contract—such as in actions for *quantum meruit* or *quantum valebant* to obtain restitution of the value, respectively, of services or goods—is implicated by Mr. Sylvia's original complaint's averments. Accordingly, the proposition that the quoted *Juhnke* language establishes is inapposite.

Mr. Wisler further argues that Mr. Sylvia abandoned his tort claims for legal malpractice by having omitted them from the amended complaint filed after those claims were dismissed. Aplees. Wisler & Xpressions' Br. at 11. In making this argument, Mr. Wisler cites scant legal authority and none on point. The only case cited is an unpublished disposition of the Kansas Court of Appeals in a malpractice suit. *See Guinn v. Raymond*, No. 90971, 2004 WL 944256, at *4 (Kan. Ct. App. Apr. 30, 2004) (unpublished). *Guinn*, however, is easily distinguished. There, the Kansas appellate panel ruled that the plaintiff had abandoned a malpractice claim against his attorney for failing to file a lost wage claim by settling the underlying action; the court reasoned that the plaintiff "never gave the trial court [in that action] the opportunity to address the lost wage claim issue head-on, and it would not have been futile to do so." *Id.* at *5. It is

29

patent that the facts giving rise to the alleged abandonment in *Guinn* bear no resemblance to the facts here. Perhaps most saliently, unlike in *Guinn*, Mr. Sylvia gave the district court a straightforward and direct opportunity here to consider and determine whether his tort characterization of his legal malpractice claims was correct. And the court actually ruled on the matter. Specifically, Mr. Sylvia pleaded his malpractice claims in Count I—distinct from his breach of contract claims—and made clear, through his complaint averments, his view that the claims evinced "a breach of . . . duty" sounding in tort. Aplt.'s App. at 17. But the court dismissed Count I in its entirety. *Guinn*'s abandonment holding is obviously inapposite here. Therefore, Mr. Wisler's reliance on *Guinn* is completely misplaced.

Furthermore, and perhaps more to the point, this court has held that "a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104–05 (10th Cir. 2002) ("As an earlier interlocutory order, the order of dismissal merged into the final judgment."); *see Montgomery v. City of Ardmore*, 365 F.3d 926, 933–34 (10th Cir. 2004); 16A Charles A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 3949.4, at 100 (4th ed. 2008) ("A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders . . . ."). The notice of appeal in this case did precisely that; it named the final judgment. Therefore, the June 19 order was an interlocutory order that merged

30

with the final judgment and Mr. Sylvia's challenge to it is properly preserved for appeal. Indeed, in the notice of appeal, Mr. Sylvia was even more specific, expressly identifying the court's June 19 order dismissing Count I as an order from which appeal was taken. Accordingly, Mr. Wisler's contention that Mr. Sylvia abandoned his malpractice claims allegedly sounding in tort by filing an amended complaint omitting those claims—after the court dismissed them—fails.

***

In sum, Mr. Sylvia's first malpractice claim relating to the failure to amend the complaint to add a workers' compensation retaliation claim sounds in tort. Thus, we reverse the district court's judgment as to that claim.

> **b. Claim Against Mr. Wisler for Voluntarily Dismissing the Underlying Litigation on the Erroneous Belief That All Claims Could Be Refiled**

As noted, although Mr. Sylvia's complaint did plead a second malpractice claim against Mr. Wisler in Count I for voluntarily dismissing the underlying lawsuit after erroneously advising Mr. Sylvia that he would be able to refile all claims, the district court did not explicitly address this claim in dismissing the entirety of Mr. Sylvia's legal malpractice action (i.e., Count I) and, more specifically, did not opine on whether this claim was properly characterized as sounding in tort or breach of contract. Presumably, this was an oversight by the district court. In any event, although the district court's judgment in favor of Mr. Wisler regarding Count I did have the effect of tacitly resolving this claim, we do not have the benefit of the district court's rationale for doing so.

31

For the reasons stated below, we decline to review the merits of the court's disposition of this second claim, which would oblige us to address the tort-contract characterization issue in the first instance. Instead, we remand the case with instructions to the district court to vacate the portion of its Count I judgment encompassing this claim and to resolve in the first instance under the principles of Kansas law explicated *supra* the characterization of this claim. In other words, the court should determine under these principles whether the claim is in fact a legal malpractice claim sounding in tort or whether it is more properly viewed as a claim for breach of contract.

We recognize that Mr. Sylvia argues vigorously on appeal that this second claim pleaded averments that "state a facially plausible claim for legal malpractice [sounding in tort] against Mr. Wisler" under "the principles established" in *Juhnke*, *Bowman*, and other Kansas cases bearing on the characterization of claims as sounding in tort or contract. Aplt.'s Opening Br. at 28. But Mr. Sylvia's argument does not acknowledge that the district court did not expressly reach his second claim, much less apply *Juhnke* and *Bowman* to it. In other words, Mr. Sylvia's argument does not engage with the district court's reasoning regarding this claim because there is not any.

We are not saying—at least in the context of de novo review, as here—that the fact that a district court's underlying reasoning is nonexistent necessarily precludes our review of its judgment effectively dismissing a claim. *See Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015) ("[T]he district court did not mention qualified immunity in its summary-judgment order. However . . . the court did explicitly deny Sheriff Glanz *all*

32

relief in its order, and part of the relief that Sheriff Glanz unquestionably sought in his summary-judgment briefing was qualified immunity. Consequently, the court effectively denied Sheriff Glanz the defense of qualified immunity when it denied his summary-judgment motion."); *cf. Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."); *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) ("Because our review is de novo, we need not separately address Plaintiff's argument that the district court erred by viewing evidence in the light most favorable to the City and by treating disputed issues of fact as undisputed.").

But there is also an absence of meaningful adversarial briefing here regarding the tort-contract characterization issue with respect to this claim. In this regard, Mr. Wisler, too, has failed to acknowledge the district court's failure to address Mr. Sylvia's second claim. And, because his appellate briefing substantially tracks the rationale of the district court's order, Mr. Wisler (like the district court) elides this claim entirely. In other words, he does not respond to Mr. Sylvia's appellate briefing regarding this claim. This absence of meaningful adversarial briefing—at least under the circumstances of this case—militates against our review. *See Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[W]e are nevertheless reluctant to definitively opine on the merits of Mr. Abernathy's Suspension Clause argument under de novo review, because the government has devoted very little time to addressing it, and, thus, we are deprived of the benefit of

33

vigorous adversarial testing of the issue, not to mention a reasoned district court decision on the subject."); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1155 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ("At the end of the day, then, and even after inviting supplemental briefing, we are left with almost no help from the government on the critical question of the statutory text's receptivity to prudential standing doctrine. Without that assistance, without as well some meaningful adversarial engagement on the question, we run a serious risk of reaching 'an improvident or ill-advised opinion[]' . . . ." (quoting *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007))).

To be sure, one might argue that Mr. Wisler's failure to make an argument in defense of the district court's judgment regarding the second claim—in the face of Mr. Sylvia's *appellate* briefing regarding it—is tantamount to a waiver. *See, e.g.*, *United States v. De Vaughn*, 694 F.3d 1141, 1154–55 (10th Cir. 2012); *United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006). But, notably, Mr. Sylvia makes *no* such waiver argument. Furthermore, we cannot ignore the fact that Mr. Sylvia never drew the district court's attention to its failure to address his second claim—through a motion for reconsideration or otherwise[4]—thereby depriving us of a reasoned district

---

[4] Mr. Sylvia certainly understood the notion of seeking reconsideration. In this regard, though not in a stand-alone motion, Mr. Sylvia purported to conditionally seek reconsideration of the district court's June 19 dismissal order in his response to *Mr. Trevino*'s motion for summary judgment. Specifically, Mr. Sylvia argued that, if the district court concluded, at the

(continued...)

34

court decision regarding that claim. Relatedly, Mr. Sylvia never made the characterization argument regarding the second claim that he does on appeal before the district court.[5] Consequently, under the circumstances presented here, we are inclined to overlook any ostensible waiver by Mr. Wisler relative to the second claim. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *Abernathy*, 713 F.3d at 552 ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary.").

---

[4](...continued)
summary-judgment phase, that Mr. Sylvia's remaining claims—which were ostensibly contractual claims—"do not, as a matter of law, 'stem from a breach of contract,' then the court must reconsider whether Mr. Sylvia's claims stem from a breach of duties imposed by law." Aplt.'s App. at 202 (quoting *id.* at 74). Mr. Sylvia made no request for reconsideration, however, of the effective dismissal of his second claim arising from the voluntary dismissal of the underlying action, in his response to Mr. Wisler's motion for summary judgment and, notably, he never brought to the court's attention its failure to expressly resolve his second legal malpractice claim against Mr. Wisler.

[5] Mr. Wisler's motion to dismiss did target this second malpractice claim, but he only argued that the claim was time-barred, because the dismissal of the underlying lawsuit—in his view, the nub of the "alleged negligence"—fell outside of Kansas's two-year limitations period for legal malpractice actions (i.e., tort actions). Aplt.'s App. at 24. Mr. Sylvia's response brief—when addressing this second Count I claim—only responded to this specific argument, contending that it "must be rejected because it is plausible that Mr. Wisler is equitably estopped from asserting the statute of limitations as a defense." *Id.* at 46 (Pl.'s Mem. Opp'n Def. Wisler's Mot. Dismiss, dated Apr. 2, 2014). In other words, in their motion-to-dismiss briefing, neither Mr. Wisler nor Mr. Sylvia made arguments regarding the tort-contract characterization issue, as it relates to this second claim.

35

Deprived of meaningful adversarial briefing regarding this claim, as well as a reasoned district court decision resolving it, we believe that the most prudent and fair course is to allow the district court to address this claim in the first instance on remand under the Kansas law principles articulated *supra*. We turn now to the single legal malpractice claim allegedly sounding in tort that Mr. Sylvia alleged against Mr. Trevino.

### 3. Malpractice Claim Against Mr. Trevino for Failure to Include a Claim of Workers' Compensation Retaliation

Mr. Sylvia contends that he pleaded a facially plausible claim for legal malpractice sounding in tort against Mr. Trevino and that the district court erred in dismissing his claim for the "same . . . reasons discussed in detail . . . in regard to Mr. Wisler." Aplt.'s Opening Br. at 30. But Mr. Trevino argues (a) that Mr. Sylvia has failed to meet the federal pleading standards, and (b) that the Kansas cases that Mr. Sylvia cites are not analogous to his case and so fail to demonstrate error by the district court.

Specifically, Mr. Trevino first asserts that Mr. Sylvia has merely pleaded legal conclusions insufficient to make out a claim for legal malpractice: "Mr. Sylvia has not alleged any facts that even infer Mr. Trevino breached a duty to exercise ordinary skill and knowledge. Moreover, no facts were pled that Mr. Trevino was negligent as an attorney by not filing a claim for workers['] compensation retaliation." Aplee. Trevino's Br. at 16. But, under contemporary pleading standards, we conclude that Mr. Sylvia adequately pleaded a legal malpractice claim sounding in tort against Mr. Trevino.

"[T]he Rule 12(b)(6) standard doesn't require a plaintiff to 'set forth a prima facie

36

case for each element.'" *Urban Settlement Servs.*, 833 F.3d at 1247 (quoting *Khalik*, 671 F.3d at 1192–93). And that standard is still fundamentally one of notice pleading intended "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *Kan. Penn Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring in part)). Plausibility requires that the scope of allegations not be "so general that they encompass a wide swath of conduct, much of it innocent." *Id.* (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

But the nature and specificity required of a complaint "depends on context." *Robbins*, 519 F.3d at 1248. For example, "[a] simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id.* This too is a relatively simple negligence action. In our view, under these circumstances, Mr. Sylvia's complaint serves to put Mr. Trevino on notice of the misconduct alleged such that he can prepare his defense.

Naturally construed, Mr. Sylvia alleges that Mr. Trevino failed to exercise the skill and knowledge required of an attorney by failing to amend the complaint to include a workers' compensation retaliation claim before withdrawing from the attorney-client relationship. This alleged negligent omission caused the retaliation claim to become time-barred, resulting in diminishment of the value of Mr. Sylvia's claims against

37

Goodyear. These allegations are sufficient on their face to state a facially plausible claim for legal malpractice sounding in tort because they are sufficient to have put Mr. Trevino on notice of the precise conduct alleged to be negligent and to be the cause of Mr. Sylvia's injury.

Mr. Trevino maintains that the district court was correct in holding that Mr. Sylvia's claim sounded in contract rather than tort and that Mr. Sylvia fails to "address the [d]istrict [c]ourt's reasoning in dismissing Mr. Sylvia's malpractice claim[s]." Aplee. Trevino's Br. at 14. According to this argument, the Kansas cases that Mr. Sylvia cites are not analogous to his case and so do not support Mr. Sylvia's contention that his malpractice claim sounds in tort. Specifically, Mr. Trevino contends that the cases "all concern which statute of limitations appl[ies] in a legal malpractice case and involve situations in which a trial court dismissed a cause of action because the perceived harm fit more appropriately within the realm of either tort or breach of contract." *Id.* (citing *Pancake House*, 716 P.2d at 578; *Bowman*, 686 P.2d at 120; *Juhnke*, 506 P.2d at 1144–45; *Price*, 422 P.2d at 979–80). He reasons that, by contrast, in Mr. Sylvia's case, "his tort claim was not independent of the breach of contract claim." *Id.* at 15.

Mr. Trevino's argument rests on a mistaken understanding of the cases. Of the cases he cites, only *Juhnke* turned directly on whether the two-year limitations period for torts or the longer period for contracts would apply. 506 P.2d at 1143, 1145 (reciting that dismissal by the trial court was based on two-year tort limitations period, but holding that the claim sounded in contract and so the three-year limitations period applied). In

38

*Bowman*, the statute of limitations was in no way implicated, and the trial court did not dismiss either cause of action; instead, the defendant challenged the jury's award of punitive damages on the grounds that the plaintiff's claim sounded in contract, not tort, and so punitive damages were inappropriate. *See* 686 P.2d at 120. Although the characterization issue in *Pancake House* did arise in the context of which statute of limitations would apply, 716 P.2d at 578, the court's determination that the plaintiff's claim sounded in tort rather than contract was decisive *not* because that holding determined which limitations period would apply but because it determined when the claim accrued, *id.* at 578–79 (tort claim accrued when substantial injury was suffered). Similarly, *Price* turned not on which statute of limitations applied but on the fact that the contract claim accrued during the life of the decedent and so survived her death, while the tort claim did not accrue until after her death and so did not survive. 422 P.2d at 981–82. But Mr. Trevino's mistaken reading of these cases regarding the relevance of the limitations question is not the only reason his argument fails.

Mr. Trevino's argument also fails because the Kansas Supreme Court has expressly decided whether to characterize malpractice claims as sounding in tort or contract in a variety of contexts. *See Tamarac Dev. Co. v. Delamater, Freund & Assocs.*, 675 P.2d 361, 363 (Kan. 1984) ("The issue of whether a cause of action sounds in contract or tort, or both, has been before this court numerous times."); *Hunt*, 839 P.2d at 47 ("Kansas cases have addressed the question[, i.e., the tort-contract characterization question,] in the context of doctors, attorneys, architects, and accountants."). Thus, we

see no reason—and Mr. Trevino offers none—why the question ought to be decided differently in the present setting, such that we should consider irrelevant the Kansas caselaw cited. We should not cavalierly seek to distinguish these cases so as to ignore binding authority from Kansas's highest court. *See Wankier*, 353 F.3d at 866 ("[We] must defer to the most recent decisions of the state's highest court.").

Mr. Trevino offers no further argument as to why the malpractice claim lodged against him must sound in contract rather than tort. The same legal principles that we applied to the claims against Mr. Wisler are controlling here. In the context of Count I, Mr. Sylvia does not allege that Mr. Trevino breached some bargained-for promise to amend the complaint to add the workers' compensation retaliation claim; instead, he essentially alleges that Mr. Trevino did not follow through with his bald assurances that all of Mr. Sylvia's five claims—including the workers' compensation claim—would end up in the complaint. In other words, Mr. Sylvia alleges that, by failing to amend the complaint, Mr. Trevino failed to "exercise the learning and skill ordinarily possessed by members of [the legal] profession in the community," *Bowman*, 686 P.2d at 120, and thereby caused him injury (i.e., diminished the value of his subsequent action against Goodyear by depriving him of his time-barred workers' compensation retaliation claim). As such, Mr. Sylvia adequately pleaded a legal malpractice claim sounding in tort.

\*\*\*

In sum, for the reasons noted above, we reverse the district court's judgment granting Mr. Trevino's motion to dismiss Mr. Sylvia's malpractice claim for failing to

40

include a workers' compensation retaliation claim in the original complaint. We turn now to Mr. Sylvia's contract claims, which the district court disposed of on summary judgment.

### B.      Summary Judgment as to the Contract Claims

We review de novo the district court's grant of summary judgment. *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 907 (10th Cir. 2009). "Summary judgment should be granted 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)). This court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015) (quoting *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1077 (10th Cir. 2011)).

Mr. Sylvia's post-dismissal amended complaint included two separate sets of contract claims: (1) claims against Messrs. Wisler and Trevino, as willful participants in a breach of contract by Wisler & Trevino, L.C., for failure to include a claim of workers' compensation retaliation; and (2) a claim against Xpressions (formerly Wisler Law Office, L.C.) and against Mr. Wisler, as a willful participant in the breach of contract of Xpressions by voluntarily dismissing the underlying case. Aplt.'s App. at 81–82, 89 (Am. Compl., dated Oct. 27, 2014). The district court granted summary judgment on Mr.

41

Sylvia's contract claims because the undisputed facts failed to show the existence of a contract to bring a workers' compensation retaliation claim or to refrain from voluntarily dismissing the case.[6]

As to the first claim of breach of contract by failure to include a workers' compensation retaliation claim, Mr. Sylvia argues (a) that the written contract with Wisler & Trevino, L.C. was incomplete, permitting the introduction of evidence of prior or contemporaneous parol, or (b) that the written contract was modified by a subsequent oral agreement. As to the second claim against Mr. Wisler and Xpressions, Mr. Sylvia appears to argue, as he did below, that Mr. Wisler entered into a contract to "assure the effect of legal services rendered" by making assurances that all claims could be refiled. Aplt.'s Opening Br. at 36 (emphasis omitted) (quoting *Juhnke*, 506 P.2d at 1145).

As to the first claim, Mr. Trevino's liability on the written contract is said to stem from his having "participated and acquiesced in the express assurances made by Mr. Wisler that a claim for workers['] compensation retaliation would be specifically included in the suit against Goodyear." *Id.* at 37. Accordingly, Mr. Trevino's contractual liability depends entirely on whether Mr. Wisler's assurances supplemented or modified the

---

[6] In its dismissal order, the district court ruled that, although the individual attorneys were not parties to the written contract, they could be held liable as owners for willful participation in the entity's breach of contract under a veil-piercing theory. *Id.* at 75–76; *see also Speer v. Dighton Grain, Inc.*, 624 P.2d 952, 958–59 (Kan. 1981) ("[A] corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured."). No party challenges this ruling on appeal, and therefore we need not opine on the matter.

42

written contract. In other words, Mr. Trevino stands or falls with Mr. Wisler; if the latter's arguments fail, so do Mr. Trevino's. We turn to this first claim and then examine the district court's judgment regarding the contract claim against Mr. Wisler and Xpressions arising from the voluntary dismissal.

### 1. Contract Claims Against Messrs. Wisler and Trevino for Failing to Include a Workers' Compensation Retaliation Claim

Before the district court, Mr. Sylvia contended that Mr. Wisler made oral promises before, during, and after the execution of the written contract of representation that served to either clarify or modify the written contract such that it would require Mr. Wisler to file a workers' compensation retaliation claim. Messrs. Wisler and Trevino argued that: (a) any prior or contemporaneous statements are barred by the parol evidence rule and so evidence of those statements is not admissible and could not create a genuine dispute as to a material fact; and (b) even assuming *arguendo* that subsequent oral promises were made to Mr. Sylvia, they would still be entitled to summary judgment because those promises are not enforceable for want of consideration.

On appeal, Mr. Sylvia contends that the district court erred in holding (a) that the written contract was complete, and (b) that there was no subsequent oral agreement modifying the written contract for want of consideration. For the reasons noted below, these arguments fail. We affirm the district court's grant of summary judgment on the breach of contract claims against Messrs. Wisler and Trevino for failure to include, or amend to include, a claim for workers' compensation retaliation.

43

### a. Incompleteness

Mr. Sylvia first contends that the written contract is incomplete, and so parol evidence is admissible and creates a genuine factual dispute preventing summary judgment.

Under Kansas law, unless a contract is incomplete, ambiguous, or uncertain, "parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible." *Decatur Cty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (quoting *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887–88 (Kan. 1992)). Where, however, a contract is "silent or ambiguous concerning a vital point" or otherwise "does not definitely embrace the entire agreement of the parties . . . parol proof may be received to supplement and explain that which is written." *Souder v. Tri-Cty. Refrigeration Co.*, 373 P.2d 155, 160 (Kan. 1962); *see Barbara Oil Co. v. Kan. Gas Supply Corp.*, 827 P.2d 24, 35 (Kan. 1992).

But there is a "wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered." *Souder*, 373 P.2d at 159. In this regard, parol evidence is admissible "when a written contract is silent as to a particular matter discussed and agreed upon between the parties," *insofar as* such evidence "may be offered on that matter *without* varying the written contract." *Hummel v. Wichita Fed. Sav. & Loan Ass'n*, 372 P.2d 67, 70–71 (Kan. 1962) (emphasis added) (quoting *Kirk v. First Nat'l Bank*, 295 P. 703, 705 (Kan. 1931)). In order then to show that the contract is incomplete and that his

44

parol is admissible, Mr. Sylvia must show that the contract is silent on the point at issue and that the parol offered would not vary the text as it stands but would merely supplement or explain it.

We conclude that the contract is not incomplete; more specifically, it is not silent as to whether Wisler & Trevino, L.C. was obligated to bring a workers' compensation retaliation claim. The relevant clause reads:

> Cory Sylvia has been wrongfully discharged due to disability discrimination and FMLA violation/retaliation and Workers Compensation retaliation from GoodYear Tire and Rubber Company on or about May 9, 2009. The firm will file suit in federal court in Kansas on *one or more* of these claims.

Aplt.'s App. at 132 (emphasis added). Put simply, the contract is not silent regarding whether Wisler & Trevino, L.C. was required to file in particular a workers' compensation retaliation claim: the firm was not. Rather, it was only obliged to bring *at least one* of the enumerated claims.

Further, Mr. Sylvia's parol averment attributed to the defendants that "a claim for workers['] compensation retaliation would be specifically included" directly contradicts the plain language of the contract. Aplt.'s Opening Br. at 33. The contract required only that the firm bring at least one of the claims. Aplt.'s App. at 132. Even were this parol evidence admissible in other respects, it would not be admissible to directly contradict an express contractual term.

Mr. Sylvia contends that the contract is incomplete because "it does not specifically identify which 'one or more of these claims' would be included in the suit

45

against Goodyear." Aplt.'s Opening Br. at 33. However, at best this is an argument for ambiguity of the contract, not for incompleteness or silence. But the agreement is not ambiguous. "There can be no ambiguity in a written agreement unless after the application of pertinent rules of construction there is left a genuine uncertainty which of two or more possible meanings was intended by the parties." *Mays v. Middle Iowa Realty Grp.*, 452 P.2d 279, 284 (Kan. 1969); *see also Ark. La. Gas Co. v. State*, 675 P.2d 369, 371 (Kan. 1984) ("This court has held a contract to be ambiguous 'when . . . the contract may be understood to reach two or more possible meanings.'" (quoting *First Nat'l Bank of Olathe v. Clark*, 602 P.2d 1299, 1304 (Kan. 1979))). Here, no meaning presents itself other than the plain meaning: Wisler & Trevino, L.C. obligated itself to bring *at least one* of Mr. Sylvia's claims. By bringing one claim, the firm met its obligation under the contract; it was not required to specifically file a workers' compensation retaliation claim. Mr. Sylvia offers no reasonable alternative reading such that the contract should be considered ambiguous.

Accordingly, the district court did not err in holding that the written contract was complete. Mr. Sylvia next contends that, even if the agreement is complete, it was modified by a subsequent oral agreement. This argument, too, fails.

### b. Subsequent Oral Agreement

The district court found that Mr. Sylvia did not raise a genuine dispute of fact regarding whether Mr. Wisler "bargained for or received any consideration in exchange for [the] alleged promise [to file the two claims omitted from the initial filing later]" or

46

whether Mr. Sylvia "incurred any loss or detriment in exchange for the promise." Aplt.'s App. at 218 (Mem. & Order, dated Oct. 26, 2015). Mr. Sylvia argues, however, that the district court erred because he suffered a detriment sufficient to serve as consideration. Consistent with the district court's holding, we conclude that Mr. Sylvia's evidence, taken as true, shows nothing more than bare promises by Mr. Wisler—unsupported by consideration—that fall well short of a subsequent agreement to modify the written contract.

Specifically, Mr. Sylvia contends that, "[i]n reliance on [Mr. Wisler's promise to file the two claims omitted from the initial filing later], I did not insist that the contract of representation be re-written to specifically state that all five claims would be included in the complaint." Aplt.'s Opening Br. at 34; *accord* Aplt.'s App. at 173 (Decl. Cory Sylvia, dated Apr. 1, 2015). As support for this argument, Mr. Sylvia directs us to the Kansas Supreme Court's decision in *Temmen v. Kent-Brown Chevrolet Co.*, 535 P.2d 873 (Kan. 1975). There, quoting liberally from the late Professor Williston's leading treatise on contracts, the court seemed to primarily center its holding on the concept of "legal detriment," ruling that, "[t]enuous though it be, we believe that under the circumstances here there was a sufficient showing of consideration." *Id.* at 880–81 (quoting 1 Samuel Williston, WILLISTON ON CONTRACTS § 102A (3d ed. 1957)).

As Professor Williston's treatise explains:

> [D]etriment in this context [has] a technical meaning. . . . [T]he detriment to the promisee need [not] be actual; rather, it is a sufficient *legal* detriment to the promisee [to satisfy the consideration

47

> requirement] if it promises or performs any act, regardless of how slight or inconvenient, which it is not obligated to promise or perform *so long as it does so at the request of the promisor* and in exchange for the promise.

3 Samuel Williston et al., WILLISTON ON CONTRACTS § 7:4 (4th ed.), Westlaw (database updated May 2017) (second emphasis added) (footnote omitted); *see In re Shirk's Estate*, 350 P.2d 1, 7, 9–10 (Kan. 1960) (applying the concept of legal detriment).

In *Temmen*, the court identified facts that—while admittedly bearing a "[t]enuous" connection to the concept of legal detriment—provided "a sufficient showing of consideration." 535 P.2d at 881. Specifically, the court noted that the plaintiff "allege[d] he specifically informed [the defendant] that unless the work [on his vehicle] were taken care of under the warranty he would take the vehicle elsewhere for the repairs and that he left it with [the defendant] only upon assurance the warranty would cover the work." *Id.* at 880. In the same vein, the plaintiff "assert[ed] that by reason of [the defendant's] agreement[,] he gave up the right to attempt to receive a better bargain elsewhere for the repair work." *Id.* In ultimately concluding that these facts yielded sufficient consideration, the *Temmen* court necessarily inferred from the plaintiff's averments that all of the features of a legal detriment to the plaintiff were effectively present, including notably a request from the defendant for the plaintiff to leave his vehicle with it for repair and thereby give up an opportunity to seek a better deal on repairs elsewhere.

There are no such facts present here. Though steadfastly maintaining that he "did not insist that the contract of representation be re-written to specifically state that all five

48

claims would be included in the complaint against Goodyear" because of his reliance on Mr. Wisler's promise to subsequently include the two omitted claims, at no point does Mr. Sylvia identify facts from which it could be reasonably inferred that Mr. Wisler asked him to forgo making a request to have the contract rewritten (i.e., an act Mr. Sylvia did not have to forgo). Therefore, a key element of a legal detriment—a request from the promisor, Mr. Wisler—is not present here. Consequently, Mr. Sylvia's detriment was not sufficient to constitute consideration for any alleged assurances from Mr. Wisler regarding the inclusion of the omitted claims. Such assurances were nothing more than naked promises. Thus, Mr. Sylvia's contention that his written contract of representation was modified by a subsequent oral agreement is without merit; any such agreement was devoid of consideration.[7]

---

[7]    In his reply brief, Mr. Sylvia largely shifts gears. For the first time, he points to different language in *Temmen*, where the court is discussing the substantial conceptual similarity between principles of consideration and estoppel. *See* Aplt.'s Reply Br. at 14–15 (quoting *Temmen*, 535 P.2d at 880). This language seemingly alludes to a possible rubric identified in Kansas caselaw—which is distinct from the legal detriment concept—for establishing "sufficient" consideration. *French v. French*, 167 P.2d 305, 308 (Kan. 1946) (cited in *Temmen*, 535 P.2d at 880–81). This rubric centers on whether "the promisor should reasonably expect [its promise] to induce action or forbearance of a definite and substantial nature [from the promisee] and which does induce such action or forbearance[,] if injustice can be avoided only by enforcement of the promise." *Id.* (discussing this rubric as separate from one focusing on whether the promisor suffered a detriment). We have no need to opine here on whether this rubric ever was an established component of Kansas contract law with respect to the issue of consideration and, if so, whether it is still viable. This is so because Mr. Sylvia's invocation of this rubric comes too late.

(continued...)

***

Because Mr. Sylvia has failed to show that the district court erred in holding that the contract was complete and that it was not modified by a subsequent oral agreement, we uphold the district court's grant of summary judgment for all defendants on the breach of contract claims for failure to include a workers' compensation claim in the underlying lawsuit against Goodyear.

---

[7](...continued)

In this regard, Mr. Sylvia has attempted for the first time in this appeal to demonstrate under this rubric that he supplied sufficient consideration through his "forbearance." Aplt.'s Reply Br. at 14. As a general matter, however, this court has routinely "declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Relatedly, "[i]t is well settled that '[t]his court does not ordinarily review issues raised for the first time in a reply brief.'" *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013) (second alteration in original) (quoting *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)). This is true even if the new issue or theory is of the same general genus, or otherwise generally related to the argument previously advanced. *Cf. Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017) ("[O]ur forfeiture-and-waiver rule applies even 'when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial.'" (quoting *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013))). Such arguments are not merely forfeited, they are "deemed waived." *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("Federal Rule of Appellate Procedure 28(a)(9)(A) requires appellants to sufficiently raise all issues and arguments on which they desire appellate review in their opening brief. An issue or argument insufficiently raised in the opening brief is deemed waived."); *see also Richison*, 634 F.3d at 1127–28 (discussing the distinction between waived and forfeited theories and noting that under certain circumstances, "*[u]nlike waived theories*, we will entertain forfeited theories on appeal" (emphasis added)). Consistent with these authorities, we will not consider this late-blooming argument by Mr. Sylvia.

## 2. Contract Claims Against Mr. Wisler and Xpressions for Voluntarily Dismissing the Underlying Case

The district court held that Mr. Sylvia had failed to show breach of any contract by Mr. Wisler and Xpressions arising from Mr. Wisler's dismissal of the case against Goodyear. As the district court put it, while alleging that Mr. Wisler "breached his contractual obligations," Mr. Sylvia failed to explain "which contractual obligations" Mr. Wisler breached. Aplt.'s App. at 219. In support of his position that the district court erred in granting summary judgment for Mr. Wisler and Xpressions, Mr. Sylvia offers only one argument. Although the exact contours of this argument are difficult to discern, he appears to assert that under *Juhnke* a contractual obligation can be implied from attorneys assuring the effect of legal services rendered. *See* Aplt.'s Opening Br. at 36. Thus, as the argument goes, Mr. Wisler—by assuring Mr. Sylvia that voluntary dismissal would not prevent the refiling of all claims—became subject to just such a contractual obligation. *See id.* But *Juhnke* stands for no such proposition.

Mr. Sylvia is only able to cite dicta from *Juhnke*—dicta that, properly read, refutes his argument. He quotes:

> Courts in other jurisdictions which have considered the question are not in harmony as to which statute of limitations—contract or tort—governs a damage action against an attorney for neglect in the performance of his professional services. *The majority appears to favor the contract approach and uniformly so where the contract breached is one* to obtain a specific result or *to assure the effect of legal services rendered* (see [H. H. Henry, Annotation, *What Statute of Limitations Governs Damages Action Against Attorney for Negligence in Performance of Professional Services*,] 49 A[.]L[.]R[.] 2d 1216[, *superceded by* 2 A.L.R. 4th 284,] and Later Case Service).

51

Aplt.'s Opening Br. at 36 (emphasis added by appellant) (quoting *Juhnke*, 506 P.2d at 1145). This language appears to be little more than an aside on the *Juhnke* court's way to holding that under the circumstances of that case—where Mr. Juhnke's attorney contracted to file an appeal and failed to do so—Mr. Juhnke's claim sounded in contract as a "failure to discharge a contractual obligation." *Juhnke*, 506 P.2d at 1145. More importantly, Mr. Sylvia misreads this language.

The language cited offers no principle of law akin to that which Mr. Sylvia advances. The language reads: "The majority appears to favor the contract approach and uniformly so *where the contract breached* is one . . . to assure the effect of legal services rendered." *Id.* (emphasis added). On its face, this language requires an existing contract. It does not call for implying a contract from a naked promise assuring the effect of legal services rendered. As the district court pointed out, the written contract here does not prohibit dismissal of the case and so cannot be the source of the alleged contractual obligation. The only alleged source of a contractual obligation that Mr. Sylvia identifies, even obliquely, is that Mr. Wisler "repeatedly assured [him] that all of the claims in the case could be re-filed." Aplt.'s Opening Br. at 36. But the *Juhnke* dictum does not make of those assurances a contractual obligation.

Mr. Sylvia fails to explain or support his assertion that such assurances created a binding contractual obligation on the part of Mr. Wisler and Xpressions not to dismiss the case. Nor does he present any other reason to reverse. Accordingly, we uphold the

district court's grant of summary judgment for Mr. Wisler and Xpressions on this claim.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment as to the breach of contract claims and **REVERSE in part and VACATE in part** the court's judgment regarding the allegedly tort-based legal malpractice claims, and **REMAND** the case for further proceedings consistent with this opinion.