BRISCOE, Circuit Judge, dissenting.
I respectfully dissent. In my view, the majority opinion fails to adhere to either the ruling made by the district court or the arguments actually asserted by plaintiffs in their appellate brief, and also does most of the heavy-lifting for plaintiffs in terms of fleshing out their claims, both factually and legally. Focusing, as we must, on the district court's ruling and plaintiffs' appellate challenges to that ruling, I would affirm the judgment of the district court.
*890 a) The district court's ruling and plaintiffs' challenge to that ruling
Defendants moved to dismiss plaintiffs' complaint on several grounds. Specifically, defendants argued that: (1) plaintiffs' first five claims failed because defendants did not owe a duty to plaintiffs; (2) plaintiffs' claim under the Trafficking Victims Protection Reauthorization Act (TVPRA) failed as a matter of basic statutory application; (3) plaintiffs' seventh claim for relief failed because 18 U.S.C. § 2 does not create a private cause of action; (4) plaintiffs failed to allege a cognizable claim under the Racketeer Influenced Corrupt Organizations Act (RICO); (5) plaintiffs' claims were nonjusticiable because they required the district court to adjudicate religious beliefs; and (6) plaintiffs' claims were barred by the applicable statutes of limitation.
The district court, in granting defendants' motion and dismissing the complaint, focused primarily on the last of these arguments. It concluded that, with the exception of plaintiff May Musser, all of the plaintiffs' legal malpractice, breach of fiduciary duty, fraud, negligent misrepresentation, civil conspiracy, and civil RICO claims were barred by the relevant statutes of limitations. Aplt. App. at 820. The district court in turn concluded that Musser's claims were inadequately pled and thus subject to dismissal. Id. As for plaintiffs' claim under the TVPRA, the district court concluded it was inadequately pled and thus subject to dismissal. Id. at 821, 837-843.
Plaintiffs, in their appellate brief, assert two general issues, both of which concern the district court's dismissal of their claims as untimely. Nowhere in their opening brief do plaintiffs argue that the district court erred in dismissing their TVPRA claim as inadequately pled, nor do they argue that the district court erred in dismissing the individual claims of May Musser.[1] Defendants, in their appellate response brief, note these deficiencies in plaintiffs' opening brief. Plaintiffs, in their appellate reply brief, argue for the first time that they are, in fact, intending to challenge the entirety of the district court's dismissal order. We have repeatedly held that a new argument raised for the first time in a reply brief comes too late and will not be considered. E.g., Sylvia v. Wisler, 875 F.3d 1307, 1332 n.7 (10th Cir. 2017) (noting that this court does not ordinarily review issues raised for the first time in a reply brief).
The majority opinion makes no mention of these procedural facts, which have for plaintiffs become a hurdle to be overcome. Nor does it attempt to confine itself to the precise arguments asserted on appeal by *891 plaintiffs. Instead, the majority opinion addresses issues never reached by the district court-in particular, whether defendants owed a duty to plaintiffs. Although we have discretion to affirm a district court's judgment on any basis found in the record, I am unaware of any rule affording us discretion to reverse a district court's judgment on the basis of issues never reached by the district court. Thus, to the extent the district court was wrong on the statute of limitations issues, the proper course would be to remand to the district court to address for the first time the other issues raised by defendants in their motion to dismiss, including whether the complaint sufficiently alleged that defendants owed a duty to plaintiffs.
b) The district court's statute of limitations rulings
In my view, both plaintiffs' response to the defendants' motion to dismiss, and their appellate brief, are conclusory in nature. Although plaintiffs allege that their complaint contained "many particularized examples" of wrongful conduct on the part of defendants Parker and Snow Christensen & Martineau (SC & M) that would have served as the last events necessary to save their various causes of action from a statute of limitations bar, they fail to discuss or cite to a single one. Aplt. Br. at 42. And that is particularly troublesome because their complaint is unnecessarily lengthy and clearly fails to comply with Fed. R. Civ. P. 8(a)(1) 's "short and plain statement" requirement. The majority opinion makes no mention of these deficiencies and, instead, does most or all of plaintiffs' work in terms of locating and discussing allegations in the complaint that might be relevant to the issue of timeliness.
In any event, an examination of plaintiffs' complaint reveals that, with two general exceptions, all of the alleged misconduct on the part of defendants occurred in 2008 or before. More specifically, nearly the entirety of the alleged misconduct discussed in the complaint concerns defendant Jeffs' use of the 1998 United Effort Plan Trust (UEP Trust), from the time it was executed until he was arrested, to control the Fundamentalist Church of Jesus Christ of Latter-Day Saints (FLDS) and its members, to incorporate underage marriage as a routine FLDS practice, and to allegedly abuse FLDS children by making them work to pay for FLDS expenses (including the legal fees of defendants Parker and SC & M).
The two exceptions in the complaint that identify more recent events are allegations (1) that Parker "participated behind the scenes in the criminal defense of Jeffs and other men by interviewing and organizing teams of defense lawyers and by assuring that those lawyers did not share information about Jeffs' conduct with the FLDS," Aplt. App. at 57 (Complaint at 40), and (2) that Parker and SC & M appeared on behalf of the FLDS in a number of civil cases that were filed after Jeffs' arrest. With respect to the first of these allegations, the complaint does not provide any details as to Parker's criminal representation of Jeffs or other individuals, including the dates of such representation. With respect to the second of these allegations, the complaint likewise provides few details. To be sure, the complaint does discuss Parker making a closing argument in March of 2014 in Utah state court. Aplt. App. at 43 (Complaint at 26). But plaintiffs fail to discuss in their pleadings how this criminal and/or civil representation impacted the accrual of any of their claims against Parker and SC & M.
At best, certain of plaintiffs' allegations can be read as suggesting that Parker and SC & M somehow concealed their misconduct from plaintiffs. But, in light of the *892 arrest and convictions of Jeffs and other male leaders of the FLDS, the raid of the FLDS's ranch in Texas, and the various civil cases that were filed by certain FLDS members, it is difficult to say the plaintiffs reasonably could not have known about the misconduct alleged in the complaint and filed their suit earlier. And, relatedly, the plaintiffs are quite vague, both in their complaint and their other pleadings, concerning precisely when and how they learned of the involvement of Parker and SC & M. Thus, in sum, there was simply no basis in the complaint for concluding that any of plaintiffs' claims (save for their claim under the TVPRA, which carries a ten-year statute of limitations) were timely.
Of course, plaintiffs argue in their second issue on appeal that the district court erred by failing to apply Utah's discovery rule to toll the applicable statutes of limitations on the basis of particularized factual averments of concealment and nondisclosure. Aplt. Br. at 48. In support, plaintiffs begin by arguing that the language employed by the district court in its order of dismissal, i.e., that " 'Plaintiffs have not established that Defendants concealed any of the alleged wrongdoings,' " suggests that it relied on "the absence of evidence , rather than the presence of well-pleaded facts which were disregarded." Id. (emphasis in original; quoting Aplt. App. at 830). This argument, however, lacks merit. The district court's use of the word "established" does not, contrary to plaintiffs' assertions, indicate that the district court dismissed plaintiffs' claims due to a lack of evidence. Quite clearly, the district court was aware that it was ruling on a motion to dismiss and it based its analysis on the allegations contained in the complaint.
Plaintiffs next argue that "the statute[s] of limitations ha[ve] no application in this matter" because SC & M never "withdr[e]w" from representing FLDS members "or t[ook] any steps to notify its parishioner clients that the attorney-client relationships it had aggressively formed with them had at some point ended." Id. at 49. Plaintiffs in turn argue that applicable law "mandates affirmative disclosure by lawyers of conflicts of interest and tortious conduct, and provides that when lawyers do not do so, they may not invoke the statute of limitations as a shield." Id. at 50.
But plaintiffs point to no cases holding that statutes of limitations are inapplicable to claims against attorneys. To be sure, plaintiffs cite to Jensen v. IHC Hosps., Inc., 944 P.2d 327 (Utah 1997), a case they did not cite in their response to defendants' motion to dismiss. In Jensen, the Utah Supreme Court discussed the concept of fraudulent concealment as it relates to the tolling of a statute of limitations. The Utah Supreme Court noted that "[f]raudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or otherwise act to conceal material facts known to him." 944 P.2d at 333. The court in turn held that fraudulent concealment can operate to toll a statute of limitations, but that this is typically a question of fact for the jury. Id. at 334-35. And, indeed, given the facts before it (i.e., a physician who knowingly and intentionally, with the knowledge of his attorney brother, withheld certain medical records indicating that he had committed medical malpractice), the Utah Supreme Court remanded that very issue to the state trial court. Quite clearly, Jensen does not hold that statutes of limitations are inapplicable to attorneys who fail to comply with duties to disclose matters to their clients. Instead, Jensen indicates that a failure to disclose or an active concealment can, depending on the particular facts at issue, operate to toll a statute of limitations.
*893 Turning to plaintiffs' complaint, they do allege, albeit in conclusory fashion, that Parker and SC & M failed to disclose certain information to them. For example, they allege that Parker and SC & M: (a) failed to inform them that "their legal rights ... were being violated on an ongoing and systematic basis by Jeffs and his favored cohorts within the FLDS," Aplt. App. at 62 (Complaint at 45); (b) failed "to advise Plaintiffs ... to seek separate and independent legal counsel," id.; (c) "should have advised Plaintiffs to forbear from contributing directly to fundraising activities carried out for the stated objective of paying Parker and SC & M for the purported benefit of legal advice and counsel for Plaintiffs and similarly situated persons," id.; and (d) "should have informed and advised Plaintiffs, in a timely fashion, regarding the fact that the true nature of the legal work and the true structure of the legal framework and pattern of tortious activity implemented by SC & M was in furtherance of the unlawful, malicious and tortious plan of Jeffs and his favored cohorts within the FLDS leadership," id. at 62-63. The only other specific examples that plaintiffs offer in their complaint are that Parker and SC & M should have informed them about the 1998 UEP Trust being declared invalid in 2005 and about Jeffs' 2007 confession that he was not a prophet.
The problem (in addition to the fact that it should have been self-evident that Jeffs and his so-called favored cohorts were acting improperly, if not illegally) is that plaintiffs fail to explain, either in their complaint or in any of their pleadings, precisely how and why these alleged failures on the part of Parker and SC & M prevented them from filing their complaint until July of 2016, particularly given Jeffs' arrest and convictions and the multiple civil lawsuits involving the 1998 UEP Trust. Relatedly, plaintiffs offer little to no explanation, either in their complaint or other pleadings, regarding how and when they learned of the wrongful acts alleged in the complaint against Jeffs, Parker and SC & M. Thus, they failed to offer the district court sufficient allegations to allow it to conclude that the applicable statutes of limitations were or at least might have been tolled due to conduct on the part of Parker and SC & M.
c) The district court's dismissal of the TVPRA claim
The district court, in dismissing the TVPRA claim, concluded that the Complaint "ma[de] no connection between [Parker and SC & M] and the alleged kidnapping aside from the tenuous connection that the YFZ camp was on 'Trust Lands' and that [Parker and SC & M] helped amend and reinstate the [1998 UEP Trust]." Aplt. App. at 837. The district court concluded that this did "not approach adequately pleading that [Parker and SC & M] 'kidnap[ped] or carrie[d] away another person' or enticed a person into slavery, or obstructed enforcement of 18 U.S.C. § 1583." Id. at 837-38. And, the district court concluded, "[t]he fact that Parker may have represented the interests of those who lived at the YFZ Ranch following the raid d[id] not support Plaintiffs' allegations on this point." Id. at 838 (citing Utah R. Prof'l Conduct R. 1.2(b) ("A lawyer's representation of a client ... does not constitute an endorsement of the client's political, economic, social or moral views or activities.")).
As for the complaint's forced labor allegations, the district court concluded that plaintiffs' theory of liability on the part of Parker and SC & M "would make attorneys vicariously liable for the acts of a client in the mismanagement of a trust simply because the attorneys prepared documents giving the client discretion in *894 how the trust was managed." Id. at 838-39. Consequently, the district court concluded that "[t]his theory [wa]s not sufficient to state a claim under 18 U.S.C. § 1589(a)." Id. at 839.
The district court also rejected plaintiffs' allegations "that Defendants engaged in a scheme, plan, or pattern intended to cause the FLDS community to believe that they would suffer serious harm or physical restraint if they did not perform forced labor or services." Id. In doing so, the district court noted that "[t]he only actions alleged by Plaintiffs [we]re that Defendants helped with Trust documents and that Parker represented an FLDS man facing a prosecution for rape." Id."This," the district court concluded, "[wa]s insufficient to support a claim of a 'scheme, plan or pattern' designed to cause the beliefs alleged by Plaintiffs." Id. More specifically, the district court noted that "[t]he Trust's provisions and the authority it g[ave] [we]re centered on the distribution of property in a way that would meet the just wants and needs of the FLDS community," and "[n]othing from the Trust or the facts alleged indicate[d] that Defendants drafted Trust documents with the intent to make FLDS members believe that they would suffer harm if they did not perform forced labor." Id. at 840.
Lastly, the district court rejected plaintiffs' claim that, because Parker and SC & M benefitted monetarily from the alleged forced labor (in terms of having their legal fees paid with the fruits of the forced labor), they were liable under the TVPRA. Specifically, the district court noted that "[r]egardless of whether Defendants knowingly benefitted from alleged forced labor, Plaintiffs ha[d] failed to adequately plead that Defendants 'participat[ed] in a venture' to provide or obtain that labor," as would be required under 18 U.S.C. § 1589(b). Id. at 842.
In their opening appellate brief, plaintiffs argue that the district court, in analyzing and dismissing their TVPRA claim, "erect[ed] an imaginary barrier between the 1998 [UEP Trust] and Jeffs' conduct, which simultaneously highlights and ignores the importance of the extensive averments in the Complaint that detail precisely how SC & M continuously furthered Jeffs' control over the FLDS, where the 1998 [UEP Trust] was the legal machination enabling that control." Aplt. Br. at 45-46. Plaintiffs also argue, relatedly, that "[t]he flaws in the District Court's reasoning [regarding the TVPRA claim] are most evident in its failure to recognize the detailed allegations relating to SC & M's receipt and acceptance of fees derived from human trafficking, and the particularized averments of SC & M's written threats and active litigation to perpetuate the unlawful use of force and threats of force to coerce its victims."Id. at 47-48.
The problem, however, is that plaintiffs' arguments are as conclusory as the allegations in their complaint. For example, they fail-both in their complaint and in their briefs-to point to any specific language in the 1998 UEP Trust that would legitimately connect Parker and SC & M to Jeffs' wrongful conduct. At best, they allege simply that the financial structure created by the 1998 UEP Trust allowed Jeffs to carry out his illegal activities. But, as the district court noted, and as plaintiffs have failed to refute (or even address), plaintiffs point to no legal authority that would make Parker and SC & M vicariously liable for Jeffs' acts in effectively mismanaging the 1998 UEP Trust to carry out his illegal goals.
In turn, plaintiffs have also failed to cite to any authority that would render Parker and SC & M vicariously liable simply because their legal fees were paid by Jeffs with the fruits of his wrongful conduct. To be sure, 18 U.S.C. § 1589(b) employs the *895 phrase "[w]hoever knowingly benefits," but it also requires any such person to have "participat[ed] in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)" of the statute (means of force, threats of force, means of serious harm or threats of serious harm, means of the abuse or threatened abuse of law or legal process, or means of any scheme intended to cause the person to believe they would suffer serious harm or physical restraint if they do not comply). Even assuming that Parker and SC & M "knowingly benefited" from Jeffs' wrongful acts in forcing FLDS members to engage in labor or services, the allegations in the complaint are insufficient to link Parker and SC & M to that wrongful conduct. More specifically, the allegations cannot reasonably be read to indicate that Parker and SC & M actually participated in Jeffs' scheme. Simply providing legal services to Jeffs, including drafting the 1998 UEP Trust, is not enough to constitute such participation.
In their appellate reply brief, plaintiffs refer to Jeffs' "scheme" being "facilitated by SC & M's empowerment," and to "SC & M work[ing] to maintain the legalistic construct that served as the latticework that supported the growth of Jeffs' poison ivy." Aplt. Reply Br. at 22-22. These vague allegations, however, are insufficient, taken on their face, to indicate that SC & M knowingly participated in Jeffs' scheme. Again, although it is undisputed that Parker and SC & M drafted the 1998 UEP Trust, plaintiffs do not identify any additional legal or other work that these defendants performed to support Jeffs' scheme.
Thus, in sum, I conclude that plaintiffs have failed to establish that the district court erred in dismissing their TVPRA claim.
I vote to affirm the district court's ruling in its entirety.

To be sure, plaintiffs make passing references in their opening appellate brief to their TVPRA claim and the district court's dismissal of it. Aplt. Br. at 45-48. But those references are contained within the context of two general appellate arguments, both of which focus exclusively on whether the district court erred in conducting its statute of limitations analysis. Id. at ii, 41-58. Therefore, plaintiffs' fleeting references to their TVPRA claim cannot reasonably be interpreted as a substantive challenge to the district court's dismissal of that claim. And, in turn, the district court's dismissal of the plaintiffs' TVPRA claim must stand. See Clark v. Colbert, 895 F.3d 1258, 1265 (10th Cir. 2018) ("By offering an incomplete challenge to the district court's analysis, Clark has effectively abandoned his appeal of its ruling.").
The majority concludes otherwise, however, and states that "any and all TVPRA arguments asserted by plaintiffs on appeal inevitably concern the sufficiency of these allegations to state a claim." Maj. Op. at 870 n.7. As I shall outline in greater detail below, even if this were true, the arguments contained in plaintiffs' appellate brief are far too conclusory to constitute a serious challenge to the district court's dismissal of their TVPRA claim.